UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Juelithia G. Zellars,<br><br>      Plaintiff,<br><br>vs.<br><br>Ms. Terrie Warren,<br><br>      Defendant. | )<br>)<br>)<br>) Civil Action No. 05-1670 (RBW)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF MS. GRETA D. JONES-SANDERS

I, Ms. Greta D. Jones-Sanders, hereby declare and state as follows:

1. I am currently the Management Analyst for the 11th Civil Engineering Squadron (11 CES) at Bolling AFB, grade GS-12. I have held this position since February 2005. Before that, I was a Management Analyst and Personnel Specialist at Hill AFB, Utah, from 2000 - 2005. Before 2000, I was an active duty Air Force member working in the personnel career field. My current immediate supervisor is Ms. Blythe McGinty, the Chief of the 11 CES Resource Flight. My duties include working various personnel and manpower issues within 11 CES.

2. On May 13, 2005, at about 8:45 a.m., I was in a meeting when a member of the 11 CES Resource Flight entered and stated he had a request from Ms. Juelithia Zellars for official time off to prepare for an upcoming appointment on May 17, 2005, with EEO investigators. In that meeting with me was Ms. Terrie Warren, Ms. Blythe McGinty and MSgt Johnson. Ms. Zellars asked to join our meeting and Ms. Warren told Ms. Zellars she could not be present because it was a supervisory meeting. Ms. Zellars requested that she be allowed to take 5 hours of official time on May 13, 2005, and 8 hours of official time on May 16, 2005. We attempted to contact the base EEO and Civilian personnel office to determine what would be a reasonable amount of time

to allow Ms. Zellars, but could not make contact with either agency. Ms. Zellars was informed that a definite response to her request would be provided later in the day. Ms. Zellers then left the meeting.

3. Approximately 30 to 45 minutes later, Ms. Zellers returned with Colonel (COL) Jasinski, the Commander of 11 CES. Col. Jasinski asked Ms. McGinty how much annual leave Ms. Zellars had. Before the Colonel could complete his sentence, Ms. Zellars cut him off in an insubordinate tone stating that she was not asking for leave, she was requesting official time. At that point, Col Jasinski stated that official time could be accomplished in the work place. Once again in a very insubordinate manner and raised voice towards Col Jasinski, Ms. Zellars stated, "I'm going to EEO, I'm going to EEO" and departed the work place. We were finally able to get in contact with the base EEO office and received guidance as to how official time requests should be handled. Management was given instructions to draft a letter and present it to Ms. Zellars regarding her request for official time.

4. At about 2:30 p.m. on May 13, 2005, Ms. Zellars and I met with Ms. Warren and gave her a letter approving her request for official time on May 13, 2005, and May 16, 2005. This letter also provided Ms. Zellars with future requirements of requesting official time. Ms. Zellars looked at the letter and stated to me that she would not sign the letter because it was not dated. I informed Ms. Zellars the letter would be dated when she signed it. At that time, Ms. Zellars stated that since I was present at the meeting, she requested to have a witness present and Ms. Warren said that was okay. Ms. Zellars departed the office and returned about 2 to 3 minutes later with Mr. Lepree. Ms. Warren indicated that since Mr. Lepree was not a resource person he should not be present. I stated that Mr. Lepree could be present as Ms. Zellars' witness. Ms. Zellars

requested that Ms. Warren start over in presenting Ms. Zellars this letter because her witness was not present earlier. When Ms. Warren began telling Ms. Zellars that she would be granted official time but it must be done in the work place, Ms. Zellars immediately said she needed time at home because all of the documents were there. Ms. Warren stated Ms. Zellars could gather all the documents during her non-duty hours and bring them in during her time of duty and work on putting everything together for the investigators at her desk. Ms. Warren also stated Ms. Zellars would not be given any other work to do when she was in official time. Ms. Zellars started to tell Ms. Warren that she has been assigned to her current section for over 55 days and at that point Ms. Warren stopped her to get back to the issue at hand. I was writing and looking down when out of the side of my left eye I saw Ms. Warren step toward forward. She was approximately four feet in front of Ms. Zellars and then Ms. Warren said, "wait a minute." Ms. Warren did not appear angry or threatening in any way. In response, all of a sudden Ms. Zellars shouted, "you're threatening me," in a loud voice. Ms. Warren told Ms. Zellars she was dismissed, stated it several more times, and Ms. Zellars and Mr. Lepree then left the office. Ms. Zellars refused to sign for receipt of the letter.

5. Ms. Warren's voice was raised during the meeting when Ms. Zellars tried to direct the meeting in a different direction, but Ms. Warren did not sound angry. Ms. Warren's tone instead was one of frustration and at no time did Ms. Warren threaten Ms. Zellars in any way.

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this __2__ day of __Sept__, 2005.

_____
Ms. Greta D. Jones-Sanders