UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Juelithia G. Zellars,<br><br>      Plaintiff,<br><br>vs.<br><br>Ms. Terrie Warren,<br><br>      Defendant. | )<br>)<br>)<br>) Civil Action No. 05-1670 (RBW)<br>)<br>)<br>)<br>)<br>)<br>) |

### DECLARATION OF MS. TERRIE WARREN

I, Ms. Terrie Warren, hereby declare and state as follows:

1. I am currently the Deputy Base Civil Engineer with the 11th Civil Engineering Squadron (11 CES) at Bolling AFB, grade GS-14. I have held this position since June 2002. Since July 2004, my immediate supervisor has been Colonel Dennis L. Jasinski, the Commander of the Bolling AFB Civil Engineering Squadron. As the Deputy Base Civil Engineer, my duties include responsibility for $80M design and construction program, $1.2B of infrastructure, 98 vehicles, 1,385 housing units—39 of which are General Officer Housing, approximately 350 employees (military and civil servants) and directing forward world-wide deployment of military troops. I have worked for the U.S. Air Force for twenty-one plus years. I have never had an employee, or any other individual seek a restraining order against me. I have been selected for a promotion to the Headquarters Air Force District of Columbia and will start that position in October 2005.

2. I know Ms. Juelithia Zellars. Ms. Zellars is employed as a Secretary (Office Automation), GS-0318-05, for the 11 CES and has worked with the Air Force for over 30 years. I am not Ms. Zellars immediate supervisor, but in the 11 CES organizational structure, I am assigned

several steps above Ms. Zellars and rarely interact with her.

3. At approximately 8:00 a.m. on the morning of May 13, 2005, Ms. Zellars asked myself and other members of 11 CES for administrative time off work for May 13, 2005 (5 hours) and May 16, 2005 (8 hours). Ms. Zellars was told that her request would be considered and she would be given a response later in the day.

4. At approximately 10:30 a.m. on May 13, 2005, Ms. Zellars approached Col Jasinski, the Commander of the 11 CES in a stairway as Col Jasinski was attempting to leave the building. Ms. Zellars again asked to take leave. Col Jasinski asked Ms. Zellars to follow him to the Resources Flight so Col Jasinski could speak to administrative personnel about this leave request. Once at the Resources Flight, Ms. Zellars stated that she wanted "official time" to work on a civilian personnel matter. Col Jasinski informed Ms. Zellars that she could have "official time," but that time would have to be taken at her duty station at Bolling AFB. Ms. Zellars stated she had a lot of material at her home and that she wanted the official time at her home. Col Jasinski informed Ms. Zellars she could bring those materials into the office as required. Ms. Zellars became very agitated and stormed off saying as she left that she was going to take this matter up with the base EEO office.

5. At 2:20 p.m. on May 13, 2005, a meeting took place between Ms. Greta Jones-Sanders, a Civilian Personnel Liaison for 11 CES, Ms. Zellars and myself. Ms. Zellars was provided a letter which stated her request for official time had been approved, but that such official time would have to be performed at the office. Ms. Zellars stated she needed a witness for the meeting and left. When Ms. Zellars returned, she had Mr. Brian Lepree, an employee of 11 CES with no involvement in this matter. As the meeting resumed, I explained to Ms. Zellars that she would be

2

authorized Official Administrative Leave that would have to be taken at her desk. Furthermore, I informed Ms. Zellars that she had to inform her supervisor if she had to leave to go somewhere else on base when she was leaving and where she was going. Ms. Zellars argued that these terms did not allow her the freedom to work from home where her documents were and said she would report me to the EEOC. I informed Ms. Zellars that she would not be assigned any other tasks during her Official Administrative Leave. Ms. Zellars tried on several occasions to take control of the meeting and more than once gave me the impression I worked for her. As the meeting culminated she was more defensive/argumentative and as a clarifying point I objected to a statement Ms. Zellars made. When I did so I moved forward and used a more stern tone of voice. A conference table remained between myself and Ms. Zellars and Mr. Lepree was standing directly to my left and blocking the path around the chair in Ms. Zellars' direction. To my great surprise, Ms. Zellars looked at me, looked at Mr. Lepree and then said I threatened her. I told Ms. Zellars she was dismissed and asked her to leave the room. Ms. Zellars continued to say I was threatening her and I had to repeat that she was dismissed a couple of times. Ms. Zellars called the base Security Forces squadron to report the threat. Security Forces took witness statements from everyone in the room and took no further action.

6. On July 20, 2005, 1Lt Travis Guidt, Ms. Zellars' first-level supervisor, issued Ms. Zellars a Letter of Counseling and Leave Restriction which set forth 1Lt Guidt's continuing concerns about Ms. Zellars' continuing excessive use of unscheduled leave and tardiness. This letter also placed strict requirements on how and when Ms. Zellars could request leave in the future.

7. The day after receiving that letter from 1Lt Guidt, July 21, 2005, Ms. Zellars filed a complaint, summons and motion for a Temporary Restraining Order in D.C. Superior Court based upon the

May 13, 2005, meeting with Ms. Warren. I was served with those papers on or about August 5, 2005.

8. On July 26, 2005, Ms. Zellars filed a claim for Workers' Compensation benefits with the U.S. Department of labor, claiming that the stress of the May 13, 2005, meeting caused nerve pain and neurological problems in her head, neck and back. That claim is still pending.

9. On August 3, 2005, 1Lt Guidt proposed Ms. Zellars' removal from Federal service. This was a non-disciplinary removal based upon non-availability for duty. This removal was proposed because Ms. Zellars was absent almost continuously from June 3, 2005, through July 25, 2005, except for 4.25 hours over several days. Ms. Zellars has not responded to this proposed removal action and the Deciding Official in the removal action, Col Jasinski, is deliberating about the proper course of action to take.

9. I believe that Ms. Zellars is attempting to use the May 13, 2005, meeting as a basis to try and delay or confuse her various pending personnel actions. In no way, shape or form did I threaten her during that meeting. I never made a verbal or written threat and there was definitely no physical contact between Ms. Zellars and myself. I believe the timing here displays Ms. Zellars' motivation. She did not seek a Temporary Restraining Order against me until more than two months had passed after the May 13, 2005, meeting. Indeed, her request for a restraining order was dated the day after she received a letter from 1Lt Guidt which set forth concerns about her continuing absences from the workplace.

Pursuant to Title 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 3rd day of September 2005.

4

_[signature]_ 3 Sept 05
Ms. Terrie Warren, DAF, GS-14, PE
Deputy Base Civil Engineer